IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO. 5:23-cv-234

RALEIGH RADIOLOGY ASSOCIATES, INC.,

    Plaintiff,

v.

ARTHUR J. GALLAGHER RISK
MANAGEMENT SERVICES, LLC,

    Defendant.

**ORDER ON ELECTRONICALLY STORED INFORMATION**

**I.**    **PURPOSE**

This Order supplements the provisions of Federal Rules of Civil Procedure 26 and 34 concerning discovery of electronically stored information ("ESI"). This Order does not displace Rules 26 or 34 or diminish a party's obligations to search for, collect, and produce discoverable information that is kept in the ordinary course as ESI. The Order does not waive any Party's rights to any protection or privilege, including the attorney-client privilege or the attorney work product doctrine. All Parties preserve their attorney-client, attorney work product, and other privileges and protections, and there is no intent by the Order to in any way waive or weaken these privileges and protections. All documents produced hereunder are fully protected and covered by any protective orders entered by the Court in this matter.

**II.**    **COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith consistent with this ESI Order.

## III. DEFINITIONS

The following definitions will apply in this Order:

A. **"Document"** means anything subject to production or inspection under Federal Rule of Civil Procedure 34(a), including (1) any document or ESI—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or (2) any tangible thing.

B. **"ESI"** means any electronically stored file or information created and/or kept as such in the ordinary course, consistent with Federal Rule of Civil Procedure 34. The parties understand that an exhaustive list of ESI types is impossible. Some types that may be produced include: (1) email messages; (2) productivity files such as word processing documents, spreadsheets, and presentations; (3) files formatted for display in a web browser, for example, files with an .htm, .html, .php, or .cfm extension; (4) Adobe Acrobat files; (5) ASCII text files; and (6) text/mobile messages.

C. **"Bates Number"** means a unique alphanumeric identifier associated with every physical sheet of paper, electronic file, electronically stored TIFF image, or other tangible thing, consisting of (1) an alphabetic portion identifying the producing party and/or other characteristics of the production; and (2) a numeric portion incremented according to a scheme defined at the producing party's discretion to ensure that the alphanumeric identifier for each physical sheet of paper, electronic file, electronically stored TIFF image, or other tangible thing is unique. The alphanumeric identifier shall be no more than sixteen (16) characters in length.

D. **"Hard Copy Document"** means a Document kept in physical form, as opposed to electronic form, in the ordinary course of a party's business.

E.     **"Native Format"** means the associated file structure defined by the original application with which an electronic file was created.  For example, the Native Format associated with a Microsoft Word file is .doc or .docx and the Native Format associated with an Adobe Acrobat file is .pdf.

IV.    PRODUCTION PROTOCOLS

Parties will produce ESI, as far as reasonably possible, in one of the following formats. To the extent the Parties encounter problems with producing ESI in one of the formats set forth below, counsel for the parties shall meet and confer to identify a suitable format in which the ESI can be produced.

A.     **Load Files.**  Parties must, as far as reasonably possible, include both metadata and image load files with each production.  The metadata load file must be produced in Concordance (.dat) or Comma–separated values (.csv) format and contain, as far as reasonably possible, the fields listed in Exhibit A.  The image load file must be produced in Opticon (.OPT) format.

B.     **Native Format**.  Parties must, as far as reasonably possible, produce ESI in native format where information may be obscured if the file were imaged or the document is not amenable to imaging. This includes, but is not limited to: (1) spreadsheets; (2) presentations; (3) databases; (4) audio; and (5) video.  ESI produced in native format must contain the Bates number in the file name or, if that is not reasonably possible, a corresponding reference sheet that identifies the document being produced by file name and a placeholder Bates number. Additionally, native files should be accompanied by an image placeholder that contains the Bates number and confidentiality designation. The producing party shall include accompanying metadata in the load file. The Parties agree not to remove metadata from native production. If after reviewing production of other ESI

in a non-native format, a Receiving Party believes that it is necessary to review a certain document or documents in native format, the parties agree to engage in discussion regarding production of discrete documents in native form, which production will not be unreasonably withheld.

C. **All Other ESI**. All ESI not covered by Section IV.A. shall be produced, as far as reasonably possible, as either black and white Group IV single-page TIFF (300 DPI, 1 bit) or single page color jpegs. Documents for which color is critical must be produced as single page color jpegs (.JPG). If after reviewing a black and white document, a Receiving Party believes that color is critical to a document, the parties agree to engage in discussion regarding production of discrete documents in color, which production will not be unreasonably withheld.

D. **Hard Copy Documents**. Parties shall scan hard copy documents and produce in an electronic format, keeping with the requirements outlined above.

E. **Parent-Child Relationships**. Parent-child relationships (the association between an attachment and its parent Document) shall be preserved whenever reasonable in such a way that a Document and any attachments to that Document are produced in the same production set and are identifiable as parent and child.

F. **De-duplication**. The parties will use their best efforts to de-duplicate documents as necessary prior to producing them; meaning that, if agreed upon, exact duplicates of a document (*i.e.*, all duplicates having the same MD5 hash value as the original document) will be removed to the best of the producing party's ability from the entire population of documents to be produced. Provided, however, that attachments to non-duplicate emails will not be de-duplicated.

G. **Email Threading**. Prior to production, the parties may de-duplicate e-mails across custodians. For clarity, no party should de-duplicate any emails unless they are identified as "family-level hash duplicate." In addition, in order to reduce unnecessary volume in the review

and production of e-mails, the parties may utilize e-mail threading, which means in instances in which a group of e-mails are captured in an e-mail string, only the latest e-mail in the string will be produced along with all attachments included in the e-mail string. Emails containing unique attachments not otherwise contained in the inclusive email shall also be produced along with their parent email. E-mails suppressed under this paragraph need not be reflected on the Party's privilege log.

H.     **Databases**.  Each party may specify the form in which ESI is to be produced when that ESI is generated by or maintained in Microsoft Access or other database software. If the Producing Party objects to such form, the parties shall undertake reasonable efforts, and, if necessary, will meet and confer to resolve any disagreements as to production format prior to the time for production. Where a party produces Microsoft Access or other database software files only in native format, the producing party shall provide a corresponding image (TIFF) placeholder that contains the Bates number and Confidentiality designation of the file.

I.     **Rule 26 Standard.**  The parties agree that if a party objects to producing ESI from a data source as not being proportional to the needs of the case, that objection shall be assessed using the factors established in Rule 26 (and case law interpreting the same).

J.     **No Backup Restoration Required.**  Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including, but not limited to, backup tapes, disks, SAN or other forms of media, in order to comply with its discovery obligations in the present case.

K.     **Devices.**  Absent a showing of good cause, the parties agree that devices—such as cell phones, computers, and tablets—that were no longer possessed by, in the control of, or available to a party at the time this litigation was filed are deemed not reasonably accessible and


no efforts at preservation or collection need be applied to them. Notwithstanding the foregoing, any such devices that were possessed by, in the control of, or available to a party at the time this litigation was filed should be maintained and the ESI stored on them preserved for purposes of collection if they are to be replaced in the normal course during litigation. The parties understand that accidents happen and devices may be lost or destroyed outside the normal course despite a party's best efforts. No additional efforts at preservation or collection need be applied to such devices, but a party requested to produce ESI stored on such device must describe the circumstances under which the device was lost or destroyed.

  **L.** **Metadata Fields**.  No Party has an obligation to create or manually code fields that are not automatically generated by the processing of the ESI or that do not exist as part of the original metadata of the document. Preferred metadata fields for production are identified in the attached Exhibit A titled "Specifications for the Production of ESI."

  **M.** **Non-English ESI**.  Textual information associated with ESI will be produced at least in the language in which it is kept in the usual course of business. This protocol does not affect translation of documents that may be produced in discovery.

  **N.** **No Obligation to Convert Third Party Productions**.  The parties agree that any document production received from a third party shall be produced in the format in which it was received.

  **O.** **Method of Production**.  The parties agree that documents produced will be made available via secure file transfer if requested by the Receiving Party.

**V.** **SOURCES, CUSTODIANS, AND METHODS OF SEARCHING FOR ESI**

  This Section V applies solely to custodian-based requests to search the ESI of the opposing

party. Responses to standard Requests for the Production of Documents which seek specific, reasonably identifiable, groups of documents are not subject to the timeline requirements set out herein.

    A.    By September 1, 2023, each party shall disclose:

1. <u>Custodians</u>. The number of custodians most likely to have discoverable information in their possession, custody, or control, from the most likely to the least likely. The custodians shall be identified by name, title, role in the instant dispute, and the subject matter of the information and shall be drawn from the parties.

2. <u>Non-custodial data sources</u>. A list of the non-custodial data sources that are most likely to contain non-duplicative discoverable information for preservation and production consideration, from the most likely to the least likely.

    B.    In addition, the parties agree to meet and confer by September 11, 2023, in order to finalize sources and custodians of ESI and to agree upon parameters for the number of custodian-based sources to whom requests may be submitted and the number and structure of the searches permitted for each such custodian. The parties may agree that no custodian-based searches are necessary in light of the needs of the case and the standard discovery already issued or likely to be issued.

## VI.   SCOPE OF AGREEMENT

This Order may be modified by a Consent Order of the parties, by agreement, or by the Court for good cause shown. Nothing in this Order is intended to, or does, waive any objections to discovery or admissibility, or any other privileges or immunities or, except as specifically provided herein, impose obligations different than those contained in the Federal Rules of Civil

Procedure and/or the Federal Rules of Evidence. The parties recognize that additional issues or unforeseen circumstances may arise in the course of discovery, and nothing in this Order is intended to, or does, restrict the ability of any party to request additional information or seek additional relief from the Court. The parties each retain the right to seek exceptions, amendments, or modifications to this Order from the Court.

**SO ORDERED**, this the 17th day of August, 2023.

_____
LOUISE W. FLANAGAN
United States District Judge

# Exhibit A

# Specifications for the Production of ESI

| CATEGORY | FIELD NAME | FIELD DESCRIPTION |
|---|---|---|
| *All* | BEGDOC | Starting number of a document |
| | ENDDOC | Ending number of a document |
| | BEGATTACH | Starting number for parent document within a group |
| | ENDATTACH | Ending number for child document within the group |
| | CUSTODIAN | Custodian(s) / source(s); Last, First |
| | CONFIDENTIAL DESIGNATION | Confidentiality designation of a document pursuant to Protective Order |
| | DOCUMENT EXTENSION | Actual file extension of the eDoc or email |
| | MD5HASH | Identifying value of an electronic record that can be used for deduplication and authentication generated using the MD5 hash algorithm |
| | FILE_PATH | Path to native files if natives are delivered |
| | TEXT PRECEDENCE | Path to text files |
| *Email* | EMAIL FROM | Sender of the email |
| | EMAIL TO | Recipient(s) of the email |
| | EMAIL CC | Recipient(s) of the email in the "CC" field |
| | EMAIL BCC | Recipient(s) of the email in the "BCC" field |
| | EMAIL SUBJECT | Subject of the message |
| | DATE SENT | Date and time the email was sent |
| | DATE RECEIVED | Date and time the email message was received |
| | NUMBER OF ATTACHMENTS | Number of attachments an email has |
| | ATTACHMENT LIST | All Beg Attach of children of the parent |
| | ATTACHMENT NAMES | File names of all Attachments |
| *E-Doc* | FILE NAME | Name of the original file; aka Filename, Original Filename, Name |
| | AUTHOR | Author eDoc; Last, First |
| | DATE CREATED | Date and time extracted from the eDoc's properties, representing the date and time that the eDoc was first created. |
| | DATE LAST MODIFIED | Date and time extracted from the eDoc's properties, representing the date and time that changes to the eDoc were last saved. |
| | SUBJECT | Subject of the document extracted from the properties of the native file, whether referred to as Subject or Document Subject. |
| | TITLE | Title of the document extracted from the properties of the native file, whether referred to as Title or Document Title. |